## Richmond

SUSAN L. MULLIS

v.

COMMONWEALTH OF VIRGINIA

No. 0379-85

Decided January 6, 1987

COUNSEL

Glen H. Silver (Steven A. Merril; Mackall, Mackall, Walker & Silver; Whitestone, Phillips, Brent, Young & Merril, P.C., on brief), for appellant.

Margaret Poles Spencer, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**COLEMAN, J.** — Susan L. Mullis was convicted of first degree murder and use of a firearm during the commission of the murder. The court imposed sentences of twenty and two years, respectively, as recommended by the jury. Mullis appeals, contending that: (1) the trial court erred in not striking for cause four pro-

spective jurors who acknowledged that they would accept the testimony of police officers over the testimony of other witnesses; (2) the trial court improperly refused to admit evidence regarding the decedent's lifestyle; (3) the court erred in allowing cross examination of appellant about her status as beneficiary of decedent's life insurance policy; (4) the court erred by rejecting appellant's proffered Instruction D; and (5) the evidence was insufficient to sustain the convictions. Finding no error, we affirm.

▮▮ Following established principles, we review the evidence in the light most favorable to the Commonwealth and give it all reasonable inferences fairly deducible therefrom. *Higginbotham v. Commonwealth*, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975). The trial court's judgment will not be disturbed unless plainly wrong or without evidence to support it. Code § 8.01-680. When the Commonwealth relies upon circumstantial evidence, the evidence must exclude all reasonable hypotheses of innocence. *Bishop v. Commonwealth*, 227 Va. 164, 169, 313 S.E.2d 390, 393 (1984). Nevertheless, circumstantial evidence which is convincing is entitled to the same weight as direct evidence. *See Parks v. Commonwealth*, 221 Va. 492, 498, 270 S.E.2d 755, 759 (1980), *cert. denied*, 450 U.S. 1029 (1981).

Viewing the facts from the vantage point most favorable to the Commonwealth, on July 23, 1983, appellant and her husband, Michael Mullis, the decedent in this case, were living in Woodbridge, Virginia. According to appellant they left home together that evening between 8:30 and 9:00 p.m. with appellant driving, headed for Clifton, Virginia. Appellant eventually drove to Kinchloe Road, a somewhat deserted location where the road changed from gravel to dirt, and parked the car on the shoulder. Evidently, while seated in the parked car, Mr. Mullis was shot and killed. There were no known eye-witnesses. Norman Longerbeam, who lived nearby on Kinchloe Road, testified that at approximately 9:30 p.m., he heard knocking on the door at his residence and heard a lady's screams that somebody had just shot her husband. He testified that when he let Mrs. Mullis in, she was hysterical. He called the law enforcement authorities. When the police officers and emergency vehicles arrived fifteen or twenty minutes later, they found Michael Mullis's body behind the steering wheel on the left side of the automobile with three gunshot wounds to his head and neck. One wound was on the left side of his head,

above his ear; the second was in his left external ear; and the third was on the left side of the back of his neck. According to the medical examiner, the wound to the left side of his head was lethal. The other two wounds resulted from gunfire within two inches (the neck wound) and four to six inches (the ear wound) of his head. Appellant told the police that she and Mr. Mullis had gone for a ride, and she had to stop "to go to the bathroom" in the woods. While in the woods, she heard "what sounded like capshots," but when she returned, she found that her husband "had been shot."

At the time of Mullis's death, he and appellant were estranged, planning to divorce, and were staying in separate rooms in their Woodbridge home. Two men whom appellant had dated soon before the homicide gave incriminating testimony against her. Michael Young, whom appellant had been seeing for about one year, testified that approximately one week after they began dating, appellant asked him if he knew "anybody that would kill" her husband. Young further stated that she had asked him several times to kill her husband, and suggested that it could be done by "shoot[ing] him." On one occasion she suggested that Young could shoot him while she and her husband were on a camping trip. Approximately one week prior to the homicide, appellant called Young and asked him to meet her, at which time she told Young that her husband "was going to be taken care of." Another boyfriend, John Hughes, testified that two weeks before Mr. Mullis was killed appellant told Hughes that "she was not getting along with her husband" and "he's not going to be around anymore." Hughes testified that appellant asked to borrow his gun.

No murder weapon was found at the scene. A ballistics expert examined portions of a bullet recovered from decedent's brain and the base of his skull, a bullet found on the passenger's floorboard side of the car which had passed through the center of the floor mat, and .22 caliber shell casings found near the driver's door and trunk and in the back seat. The ballistics expert determined that all "were acquired from one gun." An unfired .22 caliber cartridge was found on the ground near the driver's door. A large quantity of blood was on the front seat to the right of the driver's seat. Blood was also on the center of the "head-liner" of the car, on the head rest, and sprayed toward the passenger side of the roof, to the far right corner of the windshield.

The murder weapon was never recovered. Undisputed evidence proved that Michael Mullis owned a .22 caliber Ruger pistol, which he received from his family. After his death, the police searched his home but were unable to locate the pistol. The appellant was familiar with the guns owned by the decedent, having described them to the police officers, including the missing .22 caliber Ruger pistol. She acknowledged having handled the .22 caliber pistol as recently as the morning of the homicide when she removed Mullis's guns from the kitchen table where the decedent had been cleaning them and put them in his room.

An autopsy report revealed that the decedent had eaten "a pickle, ham, french fries, and some other meat fragments—possibly hamburger," less than a half hour before his death. The appellant testified that she had not seen him eat anything prior to leaving home between 8:30 and 9:00 p.m. and they only had orange juice and a Pepsi after they left. The appellant testified that the decedent was shot at approximately 9:46 p.m. This portion of the autopsy report casts doubt upon the appellant's account of when and where she and the decedent were and whether they were together until less than a half hour before his death.

Appellant was the beneficiary of Mr. Mullis's life insurance policy. She testified that they had agreed to cancel the policy, and that she thought her name had been removed as the beneficiary in February 1983. She stated that she first learned from the police after the murder that she remained the beneficiary.

## I.

### Voir Dire

We consider whether certain jurors should have been excluded from the panel for cause due to personal bias or prejudice. During voir dire examination of the jury, defense counsel asked: "[I]f a police officer gives some testimony and a private citizen gives testimony that differs from what the police officer said—are there any of you who would believe or have a tendency to believe the police officer as opposed to the private citizen? . . . This is if all things are equal." Four of the veniremen answered "yes" or "probably." Other than the one general abstract question, defense counsel did not pursue the inquiry. At the conclusion of voir dire,

defense counsel moved to strike the four prospective jurors for cause, contending that they were biased for the prosecution. The trial judge denied the challenge for cause. Defense counsel used peremptory strikes to exclude three of the four jurors.[1] The fourth juror sat on the case. Appellant contends that the trial court abused its discretion in denying the defense's motion to remove the four prospective jurors for cause.

An accused in a criminal case "is entitled to an impartial jury as a matter of constitutional guarantee, reenforced by legislative mandate and by the Rules of . . . court." *Martin v. Commonwealth*, 221 Va. 436, 444, 271 S.E.2d 123, 128 (1980) (footnote omitted); *Scott v. Commonwealth*, 1 Va. App. 447, 451, 339 S.E.2d 889, 901 (1986). "The trial judge's fulfillment of this duty involves the exercise of sound judicial discretion, which ordinarily is binding on appeal absent manifest error." *Wilson v. Commonwealth*, 2 Va. App. 134, 137, 342 S.E.2d 65, 67 (1986) (citing *Calhoun v. Commonwealth*, 226 Va. 256, 258-59, 307 S.E.2d 896, 898 (1983)). On review, the decision of the trial judge who had the opportunity to "weigh the meaning of the answers given in light of the phrasing of the questions posed, the inflections, tone, and tenor of the dialogue, and the general demeanor of the prospective juror" is entitled to much deference. *Smith v. Commonwealth*, 219 Va. 455, 464-65, 248 S.E.2d 135, 141 (1978).

However, any reasonable doubt whether a juror stands impartial is sufficient to ensure his exclusion because "it is not only important that justice should be impartially administered, but it should also flow through channels as free from suspicion as possible." *Wright v. Commonwealth*, 73 Va. (32 Gratt.) 941, 943 (1879); *see also Barker v. Commonwealth*, 230 Va. 370, 374, 337 S.E.2d 729, 731 (1985). *Voir dire* examination is the principle method of ensuring that jurors "stand indifferent in the cause" and are free of "bias or prejudice" for or against one of the parties. *See* Code § 8.01-358; Rule 3A:14. Whether a prospective juror should have been excluded for cause must be decided upon a review of the entire *voir dire*, rather than an isolated question and answer. *Fitzgerald v. Commonwealth*, 223 Va. 615, 628, 292 S.E.2d 798, 805 (1982), *cert. denied*, 459 U.S. 1228 (1983).

---

[1] The fact that the veniremen did not sit on the jury which convicted appellant is irrelevant to the issue framed on appeal. *See Breeden v. Commonwealth*, 217 Va. 297, 300, 227 S.E.2d 734, 736-37 (1976).

In an appropriate case, counsel may inquire of prospective jurors whether they would give greater or less weight to the testimony of a police officer than to that of another witness *simply because of his official status*. "A defendant cannot be fairly tried by a juror who would be inclined to give unqualified credence to a law enforcement officer simply because he is an officer . . . . [But] jurors have a right and a duty to determine credibility and to believe, in a particular case, the testimony of a law enforcement officer over that of a defendant." *Chavez v. United States*, 258 F.2d 816, 819 (10th Cir. 1958) (dictum), *cert. denied sub nom. Tenoria v. United States*, 359 U.S. 916 (1959).

 The credibility of witnesses is a matter for the jury to decide, weighing such factors as the appearance and manner of the witnesses on the stand, their intelligence, their opportunity for knowing the truth and observing the things about which they testify, their interest in the outcome of the case, their bias, and if any had been shown, their prior inconsistent statements and prior criminal convictions. *Zirkle v. Commonwealth*, 189 Va. 862, 870, 55 S.E.2d 24, 29 (1949). For a juror to give unqualified credence to the testimony of a law enforcement officer and to decide credibility issues solely on that basis is an impermissible basis for resolving credibility and would constitute bias. When it is anticipated that a major part of the prosecution's case will hinge upon a credibility determination between prosecution witnesses who have an official status and other defense witnesses who do not, then not only is such an inquiry of whether jurors would give unqualified credence to those witnesses appropriate but may be required. *Brown v. United States*, 338 F.2d 543, 544 (D.C. Cir. 1964) (case reversed for refusal to permit similar, but significantly different, question to be asked in *voir dire* when government's case relied on two military police officers and credibility was major issue).

In the present case, looking at the entire record before the trial judge rather than considering the isolated abstract question and answer of each juror, we conclude that there was no manifest error in refusing to exclude the prospective jurors. The general abstract question put to the jurors, without more, made it difficult for them to give a meaningful answer and is a poor indication of the manner in which they would serve as jurors and evaluate any particular police testimony. Certainly their responses did not indicate to the trial judge who heard the entire *voir dire* and observed

the prospective jurors that they would give unqualified credence to the testimony of a police officer. At most, their responses indicated that as an abstract proposition they would probably or would have a tendency to give some weight to the fact that a witness was a police officer in resolving credibility issues if all else were equal. *Cf. United States ex rel. Parson v. Anderson*, 354 F. Supp. 1060, 1081 (Del. 1972). "[T]he question, as framed, amount[ed] to an ingenious effort to commit a juror in advance as to how he will handle credibility choices between *a government official and the defendant*, before either of them takes the witness stand." *United States v. Jackson*, 448 F.2d 539, 542-43 (5th Cir. 1971) (case affirmed trial court's refusal to ask similar, but significantly different, question on *voir dire* on whether "apt to believe . . . official [or] the Defendant").

The four challenged veniremen stated they had no opinion as to the accused's guilt or innocence, expressed no knowledge concerning the facts of the case, had no bias or prejudice against either side, and stated they could give appellant a fair and impartial trial "based solely on the law as [the court] will explain it . . . and the evidence that [they] hear in court." The degree of impact which credibility issues played in the case as a whole was minimal and could have had very little significance on the jury's resolution of the case. The juror responses could not be classified as a state of mind which would give unqualified credence to the testimony of a police officer. We find no merit in appellant's contention that the trial court abused its discretion in refusing to dismiss the veniremen for cause and conclude that there was no manifest error in his ruling.

## II.

### Evidence of Decedent's Lifestyle

Appellant contends that the court erred in refusing to admit certain evidence of the decedent's lifestyle and his alleged involvement with drugs. Specifically, she asserts that it was error for the court to disallow: (1) testimony of a lay witness that the decedent was "paranoid" and thought somebody was out to hurt him, and (2) evidence of the decedent's medical history, particularly referring to drug abuse.

■ The record is replete with evidence of the decedent's involvement with drugs and his allegedly bizarre behavior. The trial judge admitted such evidence when shown to be relevant to an issue in the case. However, the court sustained the Commonwealth's objection to the testimony of a former roommate of the Mullis's after the following exchange:

Q. "Did Michael keep guns in the house?"

A. "Yes, he did."

Q. "Were those guns kept in the house loaded or unloaded?"

A. "Loaded."

Q. "Do you know why?"

A. "Michael was paranoid about people, that somebody was out to hurt him."

The trial court ruled that the witness was a layman, not a doctor, and could therefore not draw a medical conclusion about the reason for the decedent's actions. Lay witnesses cannot express an opinion as to the existence of a particular mental disease or condition. *Phillips v. Stewart*, 207 Va. 214, 220, 148 S.E.2d 784, 789 (1966). The fact that the layman is familiar with the term "paranoid" does not qualify her to render an opinion that someone is "paranoid." *See, e.g., Jones v. Commonwealth*, 202 Va. 236, 241, 117 S.E.2d 67, 71 (1960). Although not being offered as a medical opinion but rather used as a term that has meaning in lay parlance, the court avoided a problem by requiring the witness to answer without using terms that might lead the jury to conclude that Michael Mullis had been diagnosed as paranoid. The court did not abuse its discretion in that ruling.

■ Finally, appellant asserts that the trial court, in not permitting certain evidence about the decedent's lifestyle and drug habits, erroneously thwarted the defense's attempt to establish that the murder could have been drug-related and that another individual could have committed the murder. However, neither appellant nor any other witness testified or suggested that the decedent went to this location to buy or sell drugs. No evidence suggested that

the location was frequented by persons involved with drugs. While the circumstantial evidence must exclude all reasonable hypotheses of innocence to support a conviction, the theory of innocence must flow from the evidence, and not from the ruminations of defense counsel. *Cook v. Commonwealth*, 226 Va. 427, 432-33, 309 S.E.2d 325, 328-29 (1983). There was no evidence tending to suggest that the murder was drug-related; the evidence proffered by the defense was not shown to be connected by time or place or other way to the murder. The defense sought to introduce evidence which would have invited the jury to speculate or imagine that the murder was drug related. We find no merit in appellant's contention that the trial court unduly restricted the introduction of evidence about decedent's lifestyle.

## III.

### *Cross-examination*

While appellant concedes that, for the purpose of showing motive, the Commonwealth was entitled to question her about her knowledge that the decedent owned a life insurance policy naming her as beneficiary, she argues that the following question was improper: "[Y]ou are aware, are you not, that if you are convicted of this offense, you will not get any of that insurance proceeds?" Appellant contends that the question was improper because it was not asked whether *at the time of the alleged murder* she knew if she was convicted she would not receive the policy proceeds, and that her knowledge of this fact at the time of trial had no bearing on her motive at the time of the crime. Appellant asserts that the question was irrelevant, inflammatory, and unduly prejudicial.

The Commonwealth asserts that appellant's knowledge of whether she would receive the insurance proceeds if she were convicted was relevant both to her motive to commit the offense and to her bias as a witness. We agree. If appellant knew at the time she was testifying that she had to be acquitted to receive the proceeds, the jury might believe that she would falsify her testimony. Whether a motive existed to commit the offense and whether incentive existed to testify falsely were both factors which the jury had a right to consider in determining appellant's guilt and credibility. *See Barker v. Commonwealth*, 230 Va. 370, 373-74, 337 S.E.2d 729, 732 (1985).

## IV.

### *Jury Instruction*

Appellant contends that the language of her proffered Instruction D[2] was necessary to clarify for the jury that they were not to be influenced by the inability of the Commonwealth or the defense to identify any other criminal agent or person who committed the crime, and that appellant could not be called upon to establish her own innocence by naming or identifying the guilty person.

Instruction 1, given to the jury, defined the burden of proof upon the Commonwealth and stated: "There is no burden on the defendant to produce any evidence and the defendant does not have to prove who killed her husband." We find that appellant's proffered Instruction D was repetitive and was properly refused by the court as unnecessary. *See Hevener v. Commonwealth*, 189 Va. 802, 813, 54 S.E.2d 893, 898 (1949).

## V.

### *Sufficiency of the Evidence*

Finally, appellant asserts that the evidence was insufficient as a matter of law to convict her of first degree murder. Appellant contends that a fatal flaw in the case was that the Commonwealth never established that she had a .22 caliber pistol and .22 caliber ammunition in her possession, or that she used the weapon to fire the bullets which killed Michael Mullis. Thus, appellant argues, the Commonwealth failed to prove the essential element of means.

Appellant cites *Bishop v. Commonwealth*, 227 Va. 164, 313 S.E.2d 390 (1984), for the proposition that in a murder case in which all the evidence is circumstantial, the Commonwealth must prove time, place, means and conduct, and they must form an un-

---

[2] Instruction D provided: The court instructs the jury that, notwithstanding the fact that Susan Mullis was present at the time Michael Mullis was shot and killed, she is not to be prejudiced by the inability of the Commonwealth to point out any other criminal agent or person who committed the crime, nor is Susan Mullis called upon to vindicate her own innocence by naming, or identifying, the guilty person, but she rests secure in the presumption of innocence until proof is adduced which establishes the fact beyond all reasonable doubt that she actually shot and killed the deceased, Michael Mullis, and if the Commonwealth has failed to prove by clear, distinct and reliable evidence beyond all reasonable doubt that she shot and killed the deceased, the law requires the jury to find her not guilty.

broken chain which links the defendant to the crime beyond a reasonable doubt. In *Cantrell v. Commonwealth*, 229 Va. 387, 329 S.E.2d 22 (1985), the Supreme Court explained that the language in *Bishop* should not be too narrowly construed. Rather, the Court said that the circumstantial evidence cases stand for "the proposition that those circumstances which *are* proved must each be consistent with guilt and inconsistent with innocence, and that they . . . must *concur* in pointing to the defendant as the perpetrator beyond a reasonable doubt." *Cantrell*, 229 Va. at 398, 329 S.E.2d at 29 (emphasis in original). Appellant confuses the species of circumstances which may or may not be available for proof in any given case, such as motive, time, place, means, and conduct, with the elements of the crime, which must each be proved in every case if a conviction is to be had. *Id.* at 397, 329 S.E.2d at 28. Means is merely a circumstance which, when proved, tends to support a finding of guilt.

We find that the evidence before us, viewed under familiar principles, is sufficient to sustain the conviction. The evidence showed, among other things, that appellant knew her husband owned a .22 pistol, knew where it was kept, and in fact handled her husband's guns on the morning of the homicide. The pistol was missing after the homicide, and the jury could have reasonably inferred from its unexplained absence that she used it to kill her husband and then successfully secreted or disposed of it. The Commonwealth established time, place, opportunity, conduct, and motive for the defendant to have committed the homicide. Moreover, the evidence proved overt efforts by the defendant to procure third parties to kill Michael Mullis and most recently twice declared that "he was going to be taken care of" and "he's not going to be around anymore." Except for the defendant's bare suggestion that some other person may have committed the offense, all circumstances concur to implicate her. We do not go outside the evidence to create a doubt. We find from the evidence that all of the elements of the crime were proven beyond a reasonable doubt, and the circumstances proven— time, place, motive, conduct, and means—concurred to support the jury's finding of guilt.

*Affirmed.*

Koontz, C.J., and Hodges, J., concurred.