COURT OF APPEALS OF VIRGINIA

Present:   Judges Alston, McCullough and Huff
Argued at Alexandria, Virginia

UNPUBLISHED

SAMUEL LINDEN WEBBER

MEMORANDUM OPINION[*] BY
v.      Record No. 0665-12-4          JUDGE STEPHEN R. McCULLOUGH
                                      JUNE 4, 2013
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
Herman A. Whisenant, Jr., Judge Designate

Thomas K. Plofchan (Jason R. Collins; Jennifer M. Guida;
Lavanya K. Carrithers; Bruce W. McLaughlin; Westlake Legal
Group; Law Offices of Bruce W. McLaughlin, PLC, on briefs), for
appellant.

Victoria Johnson, Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.


Samuel Linden Webber was found guilty of one count of aggravated sexual battery. On

appeal, he argues that the trial court erred in denying a number of challenges for cause to members

of the venire, and by failing to *sua sponte* dismiss several members of the venire for cause. We hold

that the trial court erred in denying two of appellant's challenges for cause. Accordingly, we

reverse and remand.

BACKGROUND[1]

The trial court inquired of the venire as follows:

[D]o any of you know of any reason whatsoever why you would not
be able to give a fair and impartial trial to the Commonwealth and to

_____

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] As the parties are fully conversant with the record in this case and because this
memorandum opinion carries no precedential value, this opinion addresses only the facts that are
necessary to the parties' understanding of the disposition of this appeal.

the defendant based solely on the evidence you will hear in this courtroom today, as well as the instructions that the Court will give you at a later time? Do you know of any reason?

A member of the venire, Sabina Henry, asked if she could speak privately with the court. App. at 14. The court indicated that she could do so after counsel had the opportunity to ask additional questions. App. at 14-15.

The venire was told that the victim was between the ages of six and eight. Counsel for the prosecution inquired whether any members of the venire might have any concerns about serving on a jury and being unbiased based upon what occurred in the Casey Anthony case, a high profile case in Florida that, at the time, had been widely commented upon in the media. Henry indicated that she is a school teacher in an elementary school and that the principal in her school "has zero tolerance with abusing children." App. at 36. She further indicated that she works with a large number of students aged six to twelve. She specifically agreed that she deals "with abuse issues quite a bit." When asked if her experience would give her a tendency to lean toward abused victims, she answered, "[n]ot all the time." App. at 37. When asked if it would affect her "[s]ome of the time," she answered, "[i]t depends. Because children can change their mind. Their stories do not always stick to it. Sometimes it goes on, it's a different story." App. at 37. Counsel inquired "if you're given instructions by the Court, can you impartially hear all the evidence presented by both sides, impartially, without any bias one way or the other? Do you feel like you can do that, given your experience at the school, today or not?" Henry answered, "I believe so."

Defense counsel later inquired as follows:

> Obviously, all parents are protective of their children. In this particular case, we have two children. We have a teenager, and we have a younger child. Given – especially those of you who have daughters, do you have a more natural suspicion towards my client, Mr. Webber, in this particular matter?

> Do you feel like you may have a greater suspicion against him because; one, he's the party charged; or because he's an older

male, and she's an older – or younger female because, perhaps, you have daughters yourself? Does anyone here have that concern?

A member of the venire, Sandra Ingram, answered "I'm afraid I might." App. at 39. She added, "I'm also a school teacher, so . . . ." App. at 39-40. The prosecution later attempted to rehabilitate Ingram:

> [The prosecutor]: You said you may have a bias against the defendant; you're afraid that you might. Fair enough. But do you feel you would be able to take that, put it aside, and render your decision solely on the evidence as you hear it and see it and experience it in court?
>
> [Mrs. Ingram]: I would hope so, but I do also have a daughter, so it's kind of like a double whammy."
>
> [The prosecutor]: Sure.
>
> [Mrs. Ingram]: But I would hope so.
>
> [The prosecutor]: Well, we're not asking to pretend you don't have lives; you're not robots.
>
> [Mrs. Ingram]: Right.
>
> [The prosecutor]: But do you think you could take that, put it where it belongs – outside the jury room – and make your decision based on the evidence? Do you feel you could do that?
>
> [The juror]: I think so.

App. at 53-54.

The court later heard from the members of the venire who had expressed a desire to speak privately with the court, including Henry. Henry told the court, "[m]y sister was molested by her step-father when she was about 8 or 9 years old. So – I was the one who witnessed the situation." App. at 57. The following colloquy occurred:

> THE COURT: Well, I guess the question is: Can you put that aside and listen to the evidence here today?
>
> [Ms. Henry]: Yes, sir.

- 3 -

THE COURT: You can put that aside. You just wanted us to know about it, right?

[Ms. Henry]: Yes, sir.

THE COURT: But you can –

[Ms. Henry]: Yes, sir.

THE COURT: Okay. Does either counsel have questions?

[The prosecutor]: No, sir. Thank you.

[Defense counsel]: Your Honor, just briefly.
When you say – the judge asked you if you could put it aside. Do you feel like, given that you witnessed this, that you would lean more heavily towards the defendant, or not?

THE COURT: You've already asked those questions, Counsel.

[Defense counsel]: Well, I –

THE COURT: Ask –

[Defense counsel]: Would you be biased one way or the other?

THE COURT: You've already asked those questions, and they've been answered on the record. We're not going to go through it again. She just simply brought an incident to the Court's attention, and she said that would not affect her and that she could proceed today on the evidence. That's it.

Thank you, ma'am.

App. at 57-58.

At the conclusion of *voir dire*, defense counsel asked that Henry and Ingram be struck for cause. With regard to Henry, the court denied the motion, stating, "[w]ell, counsel, I have to go with her answer. Can't go with your answer. You asked the question. The question's been asked. She gave us an answer, and we have to go with the answer she gave us. We can't give answers for

- 4 -

people." App. at 61. The court also denied the motion to strike Ingram for cause. The defense used two of its peremptory strikes to remove Ingram and Henry from the venire.

At the conclusion of the trial, the defendant was found guilty of one of the three charges, acquitted of the other two, and sentenced to serve one year in prison.

ANALYSIS

Both the Virginia and United States Constitutions protect a defendant's right to be tried by an impartial jury. Va. Const. art. I, § 8; U.S. Const. amend. VI. To qualify as a juror, a venireman must "stand indifferent in the cause," Code § 8.01-358, and any reasonable doubt regarding her impartiality must be resolved in favor of the accused. Breeden v. Commonwealth, 217 Va. 297, 298, 227 S.E.2d 734, 735 (1976).

In assessing the responses of the member of the venire, the trial court must assess "whether her answers during *voir dire* . . . indicate to the court something that would prevent or substantially impair the performance of [her] duties as a juror in accordance with [the court's] instructions and [the juror's] oath." Andrews v. Commonwealth, 280 Va. 231, 256, 699 S.E.2d 237, 251 (2010) (internal quotation marks omitted) (alterations in original).

Trial courts are afforded great deference with regard to assessing the fitness of prospective jurors for service on the jury. See Juniper v. Commonwealth, 271 Va. 362, 397, 626 S.E.2d 383, 406 (2006). That is because "a trial judge who personally observes a juror, including the juror's tenor, tone, and general demeanor, is in a better position than an appellate court to determine whether a particular juror should be stricken." Teleguz v. Commonwealth, 273 Va. 458, 475, 643 S.E.2d 708, 719 (2007).

On appeal, the decision of the trial court with regard to a particular prospective juror is reviewed for "manifest error amounting to an abuse of discretion." Andrews, 280 Va. at 256, 699

- 5 -

S.E.2d at 251.  In addition, the appellate court examines "the *voir dire* of [the] juror as a whole, and do[es] not consider the juror's isolated statements."  Id.

Finally, "[i]t is prejudicial error for the trial court to force a defendant to use the peremptory strikes afforded him by Code § [19.2-262] to exclude a venireman who is not free from exception." Breeden, 217 Va. at 300, 227 S.E.2d at 737.

## I. PROSPECTIVE JUROR HENRY

The record reveals two separate grounds for concern with regard to Henry's ability to stand indifferent in the cause.  First, she mentioned her work in a school and her exposure to children who alleged they had been abused.  She was questioned on that subject and provided straightforward answers.  Second, after her work in the school had been explored, she later revealed that she had witnessed her sister being molested by her stepfather.  This disclosure came in response to the trial court's question about whether members of the venire "[knew] of any reason whatsoever why [they] would not be able to give a fair and impartial trial to the Commonwealth and to the defendant." App. at 14.  The court asked her if she could "put that aside and listen to the evidence here today?" She answered, "[y]es, sir."  App. at 57.  The court then asked a leading question, stating, "[y]ou can put that aside.  You just wanted us to know about it, right?"  Again, Henry responded, "[y]es, sir." When counsel attempted to explore this particular issue, which had not been the subject of questioning by counsel before, the trial court interrupted counsel and cut off further questioning.[2]

---

[2] We note in this connection that Code § 8.01-358 provides in relevant part that

> counsel for either party shall have the right to examine under oath
> any person who is called as a juror therein and shall have the right
> to ask such person or juror directly any relevant question to
> ascertain whether he is related to either party, or has any interest in
> the cause, or has expressed or formed any opinion, or is sensible of
> any bias or prejudice therein . . . .

Even under the deferential standard of review, we are left with doubt concerning Henry's ability to serve impartially on the jury. First, the trial court's use of a leading question certainly weakens the force of a prospective juror's answer to a rehabilitative question.[3] "A juror who initially signals a basis for disqualification, perhaps due to ignorance, can be rehabilitated, provided that 'proof of a prospective juror's impartiality . . . come[s] from his own mouth [rather than from the] predictable responses to persuasive suggestions from the attorney who attempts to rehabilitate the prospective juror.'" Garcia v. Commonwealth, 60 Va. App. 262, 271, 726 S.E.2d 359, 364 (2012) (quoting Bennett v. Commonwealth, 236 Va. 448, 469, 374 S.E.2d 303, 316 (1988)).

Second, "[t]rial courts primarily determine whether a venireperson is free from partiality and prejudice through meaningful *voir dire*." Griffin v. Commonwealth, 19 Va. App. 619, 621, 454 S.E.2d 363, 364 (1995). Here, after Henry alerted the court to her sister's abuse, the trial court foreclosed any further *voir dire* by defense counsel, thus limiting the record with regard to whether Henry could overcome this significant fact in her background. Witnessing the sexual abuse of one's sister is precisely the sort of fact that could naturally elicit bias against a defendant charged with a similar crime. The absence of meaningful questioning precludes any opportunity to allay doubts about Henry's ability to be impartial.

Third, the reason we defer to trial courts on appeal is "because the trial court [is] able to see and hear each member of the venire respond to the questions posed. Thus, the trial court is in a superior position to determine whether a juror's responses during *voir dire* indicate that the juror would be prevented or impaired in performing the duties of a juror . . . ." Lovitt v. Commonwealth, 260 Va. 497, 510, 537 S.E.2d 866, 875 (2000). "In conducting our review, we consider the juror's

---

[3] Although counsel did not object to the leading nature of the question, and we do not consider the leading nature of the question as a basis for reversal, the fact that the trial court posed such a leading question shaped the record and informs our analysis concerning whether the juror could be impartial or whether doubt exists about that member of the venire's ability to afford the defendant a fair trial.

entire *voir dire*, not merely isolated statements." Id. Here, however, the trial court indicated that it "[had] to go with her answer . . . . The question's been asked. She gave us an answer, and we have to go with the answer she gave us." App. at 61. Thus, rather than weigh Henry's answers in the totality of the *voir dire*, the trial court signaled that it "[had] to go with her answer."

A deferential standard of review is not the same as an abdication of appellate review. Virginia courts have not hesitated, where appropriate, to reverse a trial court's refusal to strike a juror for cause. See, e.g., Green v. Commonwealth, 262 Va. 105, 546 S.E.2d 446 (2001); Bradbury v. Commonwealth, 40 Va. App. 176, 578 S.E.2d 93 (2003). On these facts, even under the deferential standard of review, we are left with doubt regarding Henry's impartiality. We conclude that the trial court abused its discretion in refusing to strike her for cause.

## II. PROSPECTIVE JUROR INGRAM

The trial court's refusal to strike Ingram for cause was likewise error. Ingram, who indicated she was a school teacher, candidly admitted that she was "afraid [she] might" have greater suspicion against this defendant because he is an older male and the victim is a younger female. App. at 39. She said, "I would hope so," in response to a question concerning whether she could "put it aside," but she elaborated by saying, "I do also have a daughter, so it's kind of like a double whammy." App. at 54. Finally, she said, "I think so," in response to a leading question about whether she could "take that, put it where it belongs – outside the jury room – and make [her] decision based on the evidence."

Similarly ambiguous responses were at issue in Brown v. Commonwealth, 29 Va. App. 199, 510 S.E.2d 751 (1999). There, we concluded that "[n]early all of [the prospective juror's] responses contained the phrases, 'I think,' 'I don't know,' and 'I would try.' Her responses indicated a great degree of equivocation and created reasonable doubt about her fitness as a juror." Id. at 208, 510 S.E.2d at 755. Accordingly, we reversed and remanded for a new trial.

The Commonwealth responds by pointing to <u>Weeks v. Commonwealth</u>, 248 Va. 460, 450 S.E.2d 379 (1994), where the Supreme Court upheld the trial court's refusal to grant a motion to strike a member of the venire for cause. There are some parallels between this case and <u>Weeks</u>. The prospective juror at issue in <u>Weeks</u> responded to a question about whether he personally knew anyone who was the victim of a violent crime by stating that his wife's first cousin, who had been a police officer, had been murdered in a drug-related shootout. The venireman indicated that he and his wife had been very close to this cousin. <u>Id.</u> at 475, 450 S.E.2d at 389. In addition, as in this case, the prospective juror in <u>Weeks</u> answered, "I think so," when asked if he could "be fair and impartial and set aside anything" he may have heard in the past and whether he could "be fair in this matter, both to the Commonwealth and to the accused." <u>Id.</u> That is where the similarities end.

Significantly, in <u>Weeks</u>, the "I think so" response came after the prospective juror had "answered many questions by the trial court and counsel which reflected his ability to serve as an impartial juror." <u>Id.</u> Therefore, the prospective juror did not provide the "I think so" response in isolation. Rather, viewed in the context of the entire *voir dire*, the "I think so" response did not detract from the many answers which indicated the prospective juror would be impartial. <u>Weeks</u> provides an illustration of the settled principle that a court should review the entire *voir dire*, rather than an isolated question and answer. <u>Mullis v. Commonwealth</u>, 3 Va. App. 564, 570, 351 S.E.2d 919, 923 (1987). Henry, unlike the prospective juror in <u>Weeks</u>, did not "initially . . . answer[] many questions by the trial court and counsel which reflected [her] ability to serve as an impartial juror," nor did she "respond[] to questions by the prosecutor and [say s]he could set aside any opinion [s]he had formed about the case and could render a decision based solely on the law, and evidence produced at trial." <u>Id.</u> at 475, 450 S.E.2d at 389.

Our assessment of the entirety of the *voir dire* leads us to conclude that Ingram's commendably honest answers disclosed equivocation and leads us to doubt whether she would be able to sit impartially. Accordingly, the trial court erred in refusing to strike her for cause.

In light of our resolution of appellant's contentions with regard to Henry and Ingram, we do not address appellant's remaining contentions and assignments of error.

CONCLUSION

We reverse appellant's conviction and remand for additional proceedings if the Commonwealth be so advised.

<u>Reversed and remanded.</u>