## Alexandria

PHILLIP EDWARD FUNK, JR.

v.

COMMONWEALTH OF VIRGINIA

No. 0581-87-4

Decided April 18, 1989

92

COUNSEL

Exequiel R. Sevilla, Jr., for the appellant.

Eugene Murphy, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

COLEMAN, J.—The primary issue raised by this appeal is whether *Ake v. Oklahoma*, 470 U.S. 68 (1985), requires trial courts to appoint a psychiatrist, rather than a clinical psychologist, to assist an indigent defendant by examining, evaluating and preparing an insanity defense. The appellant contends, in effect, that *Ake* overrides Code § 19.2-169.5 by requiring the appointment of a psychiatrist to assist the defendant in the preparation of an insanity defense.

Following Funk's arrest for rape, and after defense counsel made a preliminary showing that sanity at the time of the alleged offense would likely be a substantial issue, the trial court ordered that a psychiatric evaluation be conducted at Central State Hospital to determine Funk's mental state at time of the offense. Dr. Arthur Centor,[1] a staff clinical psychologist at Central State, was

---

[1] The Virginia Supreme Court said of Dr. Centor's qualifications to testify on sanity issues:

> Edmonds objected at trial to the expert qualifications of Dr. Arthur Centor, a forensic psychologist and licensed clinical psychologist with a professional practice spanning 30 years, and on appeal "renews that objection . . . for the record." We approved of Dr. Centor's qualification as an expert witness in 1966, *Rollins v. Commonwealth*, 207 Va. 575, 580-81, 151 S.E.2d 622, 625-26 (1966), and we find no merit in this objection.

*Edmonds v. Commonwealth*, 229 Va. 303, 311, 329 S.E.2d 807, 813, *cert. denied*, 474 U.S. 975 (1985) (dealing with qualifications to testify on future dangerousness in a capital case).

the primary mental health professional who conducted the examination and evaluation and testified at trial. Over a two day period he personally interviewed, examined and conducted psychological testing of Funk. Dr. Centor indicated the total time spent in the evaluation was three hours and ten minutes, during which time he administered the Bender Gestalt test to determine organicity or brain damage affecting intellectual functioning and the Rorschach, or ink blot test, to determine the existence of any type of psychopathology. Dr. Ryan, a staff psychiatrist at Central State, also examined Funk for an unspecified time and consulted with Dr. Centor in the evaluation. Dr. Centor and Dr. Ryan had the benefit of an EEG administered to Funk by a neurologist and a physical examination by a medical doctor. Dr. Centor reported to defense counsel his findings that in his professional opinion Funk was sane at the time of the offense. The report to defense counsel did not inform him that other mental health professionals had participated in the evaluation.

After receiving Dr. Centor's report, Funk requested that the trial court appoint a psychiatrist to evaluate him as required by *Ake*. The trial court initially granted the motion and ordered that Funk be examined by a psychiatrist. When the examination had not been performed the trial court denied the request for another continuance four days before trial, ruling that the *Ake* decision did not conflict with Code § 19.2-169.5 which authorized clinical psychologists to perform sanity at the time of offense evaluations. The court also ruled that even if *Ake* does require that a psychiatrist perform the evaluation, one had been provided.

Phillip Edward Funk was convicted by a jury of rape and sentenced to twenty years in the penitentiary. On appeal, Funk asserts that his right to a fair trial as guaranteed by the due process clause of the constitution was denied by the trial court's refusal to provide him with a competent psychiatrist to assist in his defense. Funk urges that *Ake* requires that once it appears that an indigent defendant's sanity at the time of the offense will be a significant factor at the trial, the court *must* provide him at the Commonwealth's expense a competent psychiatrist to assist in preparing and presenting his insanity defense. Since the trial court provided him with a clinical psychologist rather than a psychiatrist, Funk contends that the trial court infringed his constitutional right as defined in *Ake*. Alternatively, Funk contends that the trial court

abused its discretion when, after ordering an examination by a psychiatrist, the court vacated its order, and denied him a continuance to obtain another evaluation, ruling that he had been afforded the psychiatric assistance required by law. We find no reversible error and affirm the conviction.

■ The United States Supreme Court in *Ake v. Oklahoma,* 470 U.S. at 68, construed the constitutional due process guarantee as follows:

> [W]hen a defendant demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial, the State must, at a minimum, assure the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense.

■ Funk urges us to interpret the *Ake* decision in a manner that would, in effect, entitle an indigent defendant, upon a proper showing, to a comprehensive examination by a partisan psychiatrist who will assume an adversarial role and who will provide to an accused any available and plausible insanity defense. This is so because, not only is Funk objecting to not being provided a psychiatrist, but also objecting to having been examined and evaluated by a number of mental health professionals at Central State Hospital. Like other courts and Legislatures, we do not believe *Ake* paints with so broad a stroke. We do not construe *Ake* to limit the mental health professionals who are qualified to provide the flood of assistance envisioned in that opinion to medical doctors with a specialty in psychiatry. Although Justice Marshall, writing for the majority in *Ake,* repeatedly refers only to "psychiatrists" and "psychiatric assistance," we think it clear that he uses those terms in a broad, generic sense, not intending to exclude other mental health professionals who are competent and qualified by education and training to make insanity evaluations. Justice Marshall's description of psychiatric experts is sufficiently broad to include all mental health professionals who by education and training are competent "to identify the elusive and often deceptive symptoms of insanity" and who can translate those findings into meaningful information for courts and juries in deciding legal in-

sanity or other relevant issues involving mental states. *Ake*, 470 U.S. at 80 (citation omitted).

Prior to the *Ake* decision, various interdisciplinary studies in forensic psychiatry concluded that clinical psychologists, who are trained in forensic evaluations, are qualified and competent to evaluate a person's sanity at the time of an offense.[2] The Criminal Justice Mental Health Standards, approved by the American Bar Association in August 1984, recommended that courts require psychiatrists *or clinical psychologists* or other designated mental health professionals who have received forensic training as the only professionals authorized to conduct insanity at the time of offense evaluations.[3]

Also, before *Ake*, the Virginia General Assembly, based on studies which concluded that clinical psychologists were competent mental health professionals to conduct forensic evaluations[4] provided in Code § 19.2-169.5(A), as enacted in 1983, that such evaluations "be performed by at least one psychiatrist or psychologist with a doctorate degree in clinical psychology who is qualified by training and experience to perform such evaluations." Following *Ake*, the General Assembly amended Code § 19.2-169.5(A) in 1986 to include designated mental health experts who met certain educational and licensing or registration requirements provided they were "qualified by specialized training and experience to perform forensic evaluations."[5]

[2] Petrella, R. and Poythoress, N., *The Quality of Forensic Evaluations: An Interdisciplinary Study*, Journal of Consulting and Clinical Psychology, Vol. 51, pp. 76-85 (1983) (concluding that clinical psychologists with forensic training perform insanity at time of offense evaluations with equal, if not greater, thoroughness and quality than do psychiatrists). *See generally*, Bonnie, R. and Slobogin, C., *The Role of Mental Health Professionals in the Criminal Process: The Case for Informed Speculation*, 66 Va. L. Rev. 427 (1980); Glass, R., *The Psychologist as Expert Witness: Science in the Courtroom*, 38 Md. L. Rev. 539 (1979); Perlin, M., *The Legal Status of the Psychologist in the Courtroom*, 5 Psychiatry & L. 41 (1977).

[3] *See* American Bar Association Standing Committee on Association Standards for Criminal Justice, *Criminal Justice Mental Health Standards*, Standards 7-3.11, 7-3.12 and 7-3.13 (approved August 1984).

[4] *Final Report on House Joint Resolution No. 22*, Department of Mental Health and Mental Retardation, pp. 22-29 (June 30, 1982).

[5] The 1986 amendment to Code § 19.2-169.5(A) included a provision that an accused "shall not be entitled to a mental health expert of his own choosing or to funds to employ such experts." It is noteworthy that this amendment was with *Ake* in mind since this provision tracks language from *Ake* at 83: "This is not to say, of course, that the

■ After the *Ake* decision, the Virginia Supreme Court has also recognized that *Ake* was not so broad as to recognize "a constitutional right [for an indigent] to choose a psychiatrist of his personal liking or to receive funds to hire his own," *Gray v. Commonwealth*, 233 Va. 313, 329, 356 S.E.2d 157, 166, *cert. denied*, 108 S. Ct. 207 (1987) (quoting *Ake*, 470 U.S. at 83). Likewise, the court has held that an indigent has no constitutional right "to shop around" at state expense until he receives a favorable report or a doctor willing to assist him. *Pruett v. Commonwealth*, 232 Va. 266, 276, 351 S.E.2d 1, 7 (1986), *cert. denied*, 107 S. Ct. 3220 (1987).[5]

Considering the interdisciplinary studies and trends prior to the *Ake* decision, and the legislative and judicial responses since, we conclude that the Supreme Court did not intend to restrict to psychiatrists those mental health professionals who could perform evaluations of insanity at time of the offense. Accordingly, we hold that the trial court correctly ruled that the examination and evaluation of Funk by Dr. Centor and the mental health professionals at Central State Hospital satisfied the requirements of both Code § 19.2-169.5(A) and the due process requirements defined in *Ake*.

Funk also claims that the trial judge abused his discretion in denying a continuance to obtain a second evaluation by a psychiatrist. The record reveals that the motion judge who ordered a second evaluation by a psychiatrist did so only because defense counsel prevailed in his argument that *Ake* required that a psychiatrist rather than a clinical psychologist was required in order to satisfy the due process requirements. Four days before trial, the trial court ruled that Funk had received an evaluation by mental health professionals which satisfied the statutory requirements of Code § 19.2-169.5(A) and the constitutional due process requirements. Funk was not entitled to further assistance at the Commonwealth's expense other than to have available at trial those witnesses to testify about their findings relevant to his sanity defense. Anything further would be an act of "judicial grace." *Gray v. Commonwealth*, 233 Va. at 329, 356 S.E.2d at 166. Thus, the trial court provided Funk with "all that he was constitutionally or statutorily entitled to" receive under *Ake* and Code § 19.2-169.5. *See Pruett*, 232 Va. at 276, 351 S.E.2d at 7. Funk presented

indigent defendant has a constitutional right to choose a psychiatrist of his personal liking or to receive funds to hire his own."

through Dr. Centor the evidence on his mental state which was available. He does not contend that a continuance was necessary to enable him to further develop his insanity defense through Dr. Centor or the other mental health experts who had examined him. We find no abuse of discretion in denying a continuance since Funk was not entitled to receive an additional evaluation by a psychiatrist.

Accordingly, we affirm the trial court's decision.

*Affirmed.*

Barrow, J., and Keenan, J., concurred.