COURT OF APPEALS OF VIRGINIA


Present:  Judges Coleman, Bumgardner and Lemons
Argued at Salem, Virginia


JAMES CARL McCULLOCH
                                              OPINION BY
v.    Record No. 0863-98-3        JUDGE RUDOLPH BUMGARDNER, III
                                             MAY 25, 1999
COMMONWEALTH OF VIRGINIA


             FROM THE CIRCUIT COURT OF THE CITY OF ROANOKE
                     Clifford R. Weckstein, Judge

             Roger Dalton, Senior Assistant Public
             Defender (Office of the Public Defender, on
             brief), for appellant.

             Michael T. Judge, Assistant Attorney General
             (Mark L. Earley, Attorney General, on brief),
             for appellee.


     James C. McCulloch appeals his conviction of first degree

murder of his wife.  He argues that the trial court erred (1) in

denying his request for a second expert to evaluate his sanity

at the time of the offense, and (2) in not permitting lay

witness testimony about his sanity at the time of the offense.

Concluding that the trial court did not err, we affirm.

     The defendant's wife entered a grocery store bleeding from

a stab wound.  Just as she entered, two customers saw a man run

past the front of the store.  They chased him and saw him

holding a knife.  The two followed the man, who turned out to be

the defendant, to his home.  When the police arrived, they found

a bloodstained knife in the kitchen sink, and the defendant admitted to them that he stabbed his wife.

Pursuant to the defendant's motion, the trial court appointed Dr. Jerome S. Nichols, a licensed clinical psychologist, to evaluate defendant's competency to stand trial and mental state at the time of the offense. Dr. Nichols reported that the defendant was competent to stand trial. Only the defendant's attorney was given the evaluation on sanity at the time of the offense. It would show that the defendant was sane.

The defendant attempted suicide while in jail. Following further evaluation, Dr. Nichols found the defendant no longer competent to stand trial. The trial court continued the trial and committed him to Central State Hospital. After treatment, the hospital found the defendant competent and returned him for trial. The trial court again continued the trial when Dr. Nichols indicated the defendant needed additional treatment. Though the doctor changed that opinion, the trial court still continued the case to allow additional medical treatment.

The defendant filed an insanity defense notice on June 25 pursuant to Code § 19.2-168. The Commonwealth then moved for an examination of the defendant by a qualified mental health expert pursuant to Code § 19.2-168.1. The trial court granted the motion and returned the defendant to Central State Hospital for

-

the evaluation.  That evaluation found him sane at the time of the offense.

On the day before the trial, the defendant moved for appointment of a psychiatrist to determine sanity at the time of the offense.  The trial court ruled that the initial appointment of Dr. Nichols, a psychologist, had satisfied all legal requirements and that the defendant was not entitled to another court-appointed expert.  The trial court found that the defendant offered no more than a possibility that a second opinion would reveal anything different.  The trial court denied the motion but emphasized that it would reconsider its ruling at any time the defendant presented a factual basis indicating by more than a mere possibility that a second opinion would assist the defense.

At the pretrial hearing the day before trial, the trial court ruled that unless the defendant presented expert testimony that he suffered from a disease of the mind, he could not present evidence that he was insane at the time of the offense. Until the defendant proffered expert testimony that he was insane under the law of Virginia, he could not offer during the guilt phase testimony about his mental state at the time of the offense.

The defendant also sought to prove insanity through the testimony of lay witnesses who observed his behavior, demeanor, and actions.  The defendant proffered the testimony of several

-

witnesses.  The court ruled that the affirmative defense of insanity required the defendant to introduce "into evidence [] someone's opinion that the defendant is 'insane' . . ., [and] all that a lay witness can do is to give observations about facts."  Having no expert opinion that the defendant was insane, the trial court precluded the defendant from introducing other testimony about his mental condition at the time of the offense.

During the trial, the defendant proffered that one witness would testify that after his arrest the defendant spoke to her as if she were his wife.  Another would testify that before the murder he "didn't seem right."  Still another would testify that a month before the murder the defendant "was not acting like himself."  The testimony of seven jail inmates would indicate variously that the defendant "was crazy"; "acted very nervous all the time like he didn't have it all together"; "cried a lot"; "would sit in his cell and bark like a dog"; "acts like he is in another world and just kind of hangs to himself"; "acted very depressed"; and "acted like he had a split personality."  Two additional witnesses would testify that the defendant lost forty pounds, thought his wife was alive, had blackouts and was not sleeping and that the defendant lost sixty pounds and "hears and sees things."

The trial court excluded some lay testimony because it concerned the defendant's conduct and demeanor after the offense was committed.  It excluded other testimony because it was

-

impermissible lay opinion.  The trial court permitted one lay witness to testify about the defendant's habits before the murder because it corroborated the defendant's testimony.  It also permitted the defendant to testify about his state of mind at the time of the offense.

Indigent defendants are entitled to the appointment of a psychiatrist to assist in their defense, but this right is not absolute.  See Ake v. Oklahoma, 470 U.S. 68, 77 (1985).  The defendant must demonstrate "that his sanity at the time of the offense is to be a significant factor at trial . . . ."  Id. at 83.  A request unaccompanied by a showing of reasonableness is properly denied.  See Caldwell v. Mississippi, 472 U.S. 320, 323 n.1 (1985).  The trial court did appoint an expert, Dr. Nichols, who determined that, in his opinion, the defendant was sane at the time of the offense.

The defendant argues that his case required the appointment of an additional expert because Dr. Nichols is not a psychiatrist.  The Supreme Court in Ake recognized the obligation of the trial court to provide a defendant with "one competent psychiatrist."  Ake, 470 U.S. at 79.  However, that Court "did not intend to restrict to psychiatrists those mental health professionals who could perform evaluations of insanity at the time of the offense."  Funk v. Commonwealth, 8 Va. App. 91, 96, 379 S.E.2d 371, 373 (1989).

-

The only reason given to support the request for appointment of a psychiatric expert was the suggestion that a psychologist was not competent to evaluate any relevant effect upon defendant resulting from a previous bullet wound to his head. Dr. David Hartman, the psychiatrist who treated the defendant for ten years after that shooting, stated that the gunshot wound had not entered the brain and had caused no organic brain damage. When Dr. Hartman was unable to offer an opinion about the defendant's mental state at the time of the offense, the trial court excluded his testimony.

The trial court did not err in refusing to appoint a psychiatrist as a second expert. The court found that the defendant had not established a factual basis to support his request. Determining whether the defendant has made an adequate showing is a decision that lies within the trial court's discretion. See Husske v. Commonwealth, 252 Va. 203, 211, 476 S.E.2d 920, 926 (1996).

The trial court did not abuse its discretion. There was no indication that a further evaluation would turn out differently. The basis for the request was supposition that was not supported by the defendant's own doctor. When denying the motion, the trial court emphasized that it would reconsider the ruling if the defendant presented anything to indicate there was more than the mere possibility that a second expert would conclude differently. The defendant presented nothing to suggest more

-

than a mere possibility.  All medical evaluations concluded that the defendant was sane at the time of the offense.  The first appointment met the obligation to provide a mental health expert, and the defendant never showed a particularized need for an additional evaluation.  See id. at 213, 476 S.E.2d at 926.

Next, the defendant argues that the trial court erred in ruling that expert testimony was a necessary predicate to his asserting an insanity defense and erred in excluding the proffered lay witness testimony.  The trial court held the defendant had to present expert testimony before he could introduce lay evidence to support his insanity defense.  We conclude that the holding was correct in this case.  The evidence did not support the defendant's insanity defense, though in an appropriate case factual testimony alone may be sufficient to establish the defense.

The defendant must prove to the satisfaction of the jury that he was insane at the time of the offense.  See Christian v. Commonwealth, 202 Va. 311, 316, 117 S.E.2d 72, 75-76 (1960).  He has the burden of affirmatively raising the issue of insanity and proving his mental disease or defect by a preponderance of the evidence.  See Taylor v. Commonwealth, 208 Va. 316, 322, 157 S.E.2d 185, 189-90 (1967); Herbin v. Commonwealth, 28 Va. App. 173, 183, 503 S.E.2d 226, 231 (1998).  Herbin stated that both facets of the M'Naghten test require a showing of a disease of the mind.  "Although lay testimony may support a plea of

-

insanity, 'it is generally recognized that it is advisable to adduce expert testimony to better resolve such a complex problem.'" Herbin, 28 Va. App. at 183, 503 S.E.2d at 231 (quoting Shifflett v. Commonwealth, 221 Va. 760, 769, 274 S.E.2d 305, 311 (1981)).

"While lay witnesses may testify to the attitude and demeanor of the defendant, '[l]ay witnesses cannot express an opinion as to the existence of a particular mental disease or condition.'" Id. (quoting Mullis v. Commonwealth, 3 Va. App. 564, 573, 351 S.E.2d 919, 925 (1987)). In Mullis, 3 Va. App. at 573, 351 S.E.2d at 925, a lay witness was not permitted to explain the defendant's actions by testifying that he was "paranoid" because this might suggest to the jury that the defendant had been diagnosed "paranoid." Here, no medical evidence supporting an insanity defense was introduced, and the lay testimony defendant proffered was insufficient to establish a prima facie case for an insanity defense.

The trial court excluded lay witness testimony that addressed the defendant's state of mind when offered for the purpose of establishing his sanity at the time of the offense. The court reserved ruling on whether the same testimony could be admissible for a different purpose. At trial, however, the defendant never offered lay testimony for the purpose of determining whether the defendant acted with malice. We hold that the trial court did not err in excluding testimony for the

-

purpose for which it was offered, and we will not consider an argument presented by a party for the first time on appeal.  See Rule 5A:18.

Concluding that the trial court did not err, we affirm the conviction.

Affirmed.