BUMGARDNER, III, Judge.
William White, Jr., entered a conditional plea of nolo contendere to first-degree murder and assault and battery on a police officer.[1] He appeals his convictions maintaining the trial court erred in denying his motion for a continuance, in *126 granting the Commonwealth’s motion in limine, and in denying a motion that the defendant be confined in a mental hospital, pursuant to Code § 19.2-176(A), rather than sentenced to the penitentiary.
A panel of this Court held the trial court erred in granting the motion in limine, reversed, and remanded the case. White v. Commonwealth, 44 Va.App. 429, 605 S.E.2d 337 (2004). Upon rehearing en banc, a majority of the Court affirms the convictions.
After the defendant’s car broke down in North Carolina, he paid Elkton Giliken $1,300 to drive him to New York. When they reached the junction of 1-95 and U.S. 301 in Greensville County, the defendant directed Giliken to a motel. Giliken abandoned the defendant and called the police after the defendant said he was going to kill someone, pulled out a knife, and got out of the car. Later that night, Mark Hulo was found in his motel room cut and stabbed twenty-seven times of which four wounds were fatal. A friend of the victim, who was staying in an adjacent room, saw a man flee the scene.
The next day, a state trooper encountered the defendant walking along the interstate and warned him to get off that highway. The trooper later arrested the defendant because he was still on the interstate right of way as he backed up an exit ramp. During the arrest, the defendant hit the trooper in the chest and face. The investigation connected the defendant to the local motel, and he was arrested for the murder. DNA testing proved the victim’s blood was on the defendant’s clothing.
The general district court granted a defense motion for psychiatric evaluation. It appointed William D. Brock, Ph.D., a licensed clinical psychologist, as the defendant’s expert and directed Dr. Brock to determine competency to stand trial and sanity at the time of the offense. He reported to the court that the defendant was competent to stand trial and to the defendant that he was not insane at the time of the offense.
Two months before the trial date, defense counsel filed notice of intent to present evidence of insanity, Code § 19.2- *127 168. A month later, he moved to have Dr. Brock re-evaluate the defendant in light of additional information about his treatment in a Louisiana mental hospital. The trial court ordered an expedited re-evaluation. The doctor reported that the new data did not change his initial opinion that the defendant was sane at the time of the offense. The Commonwealth filed a motion in limine citing Dr. Brock’s opinion and maintaining the defendant would not have sufficient evidence to raise the defense of insanity.
On the morning of trial, December 12, the defendant moved for a continuance on two grounds: he had not received a transcript of the preliminary hearing until the night before, and he had only been able to contact Joseph Skinner, a licensed clinical social worker, the night before. Counsel explained that from the beginning of his investigation, he had been trying to locate a “Dr. Skinner” who had seen his client at the jail. He assumed Dr. Skinner was Dr. Marvin Skinner, and only four days before learned he should have been looking for Joseph Skinner. Skinner was not a doctor but a licensed clinical social worker who had seen the defendant ten times between April and September. Skinner believed the defendant “has a religious preoccupation [with] visual and auditory hallucinations.”
The defendant acknowledged Skinner was not qualified to render an expert opinion on legal sanity, but he proffered:
Dr. Skinner advised me that he could render a professional opinion, and I did fax him a copy of the rules, that his opinion would be that at the time of the incident [the defendant] believed that God’s law superseded man’s law, and therefore what he did was not wrong. And, that would be his testimony if he was allowed to give an opinion.
The defendant argued the conflict between the opinions of Dr. Brock and Skinner “possibly” called for another evaluation by Dr. Brock or, alternatively, a separate evaluation.
The trial court denied the continuance on both grounds and immediately addressed the pending motion in limine. The parties agreed that Dr. Brock would opine that the defendant *128 had a drug-induced psychosis but “in that psychosis he was still able to determine the difference between right and wrong.” The defendant had no other expert opinion to offer.
The defendant proffered Skinner’s testimony and interview notes that the defendant heard voices, which he believed to be from God, both before and after the stabbing. After the stabbing the defendant was in jail and had no access to illicit drugs. The defendant also proffered the testimony of several lay witnesses who described the defendant’s mental condition before coming to Virginia and while incarcerated awaiting trial.[2]
The defendant proffered that Skinner believed the defendant had a psychosis that was a religious obsession because he still heard voices when he was in jail and could not have been using illegal drugs. While acknowledging Skinner was not qualified as an expert, the defendant maintained he was more than a lay witness. “I don’t think I would characterize him as a true lay witness either.”
The defendant maintained Dr. Brock’s opinion that the defendant was sane supported Skinner’s belief that he was not sane. Defense counsel noted that Dr. Brock recognized the defendant suffered from a drug-induced psychosis and went on to explain his theory:
I believe here, Your Honor, because of that if the defense can produce evidence that shows that my client was having the same symptoms, that he was having directly prior to the incident, that of was [sic] hearing voices and indeed he was *129 having those symptoms while he was not under the influence of drugs, i.e. prior to the event being testified to by his family members, more importantly after the event when he was incarcerated without having access to drugs, both by the guards and more importantly by Dr. Skinner.
The defendant maintained the lay evidence showed the defendant heard voices when he was not on drugs thus Dr. Brock had no factual basis for concluding he was sane at the time of the offense. In essence, he argued the lay evidence discredited the factual basis of Dr. Brock’s opinion the defendant was sane, which would permit a jury to find the defendant was insane.
The trial court ruled “that the introduction of the proffered testimony would not rise to the level of that which would warrant admissibility on the issue of insanity at the time of the offense,” and granted the Commonwealth’s motion in limine. It suggested the evidence might be appropriate in mitigation or extenuation, and the defendant presented it at the sentencing hearing.
The defendant then tendered a conditional plea of nolo contendere, the parties stipulated the evidence, and the trial court convicted. The trial court subsequently declined to commit the defendant to a mental hospital and sentenced him to life in prison for murder and to five years in prison for the assault and battery of a law enforcement officer.
“[I]nsanity is an affirmative defense that the defendant must establish” by a preponderance of the evidence. Shifflett v. Commonwealth, 221 Va. 760, 769, 274 S.E.2d 305, 310 (1981). Under the M’Naghten rule,
“it must be clearly proved that, at the time of the committing of the act, the party accused was labouring under such a defect of reason, from disease of the mind, as not to know the nature and quality of the act he was doing; or, if he did know it, that he did not know he was doing what was wrong.”
*130 Price v. Commonwealth, 228 Va. 452, 457, 323 S.E.2d 106, 109 (1984) (quoting M’Naghten’s Case, 10 Cl. & F. 200, 210, 8 Eng. Rep. 718, 722-23 (1843)).
McCulloch v. Commonwealth, 29 Va.App. 769, 775, 514 S.E.2d 797, 800 (1999), recapitulated the fundamental requirements of the defense of insanity:
[The defendant] has the burden of affirmatively raising the issue of insanity and proving his mental disease or defect by a preponderance of the evidence. See Taylor v. Commonwealth, 208 Va. 316, 322, 157 S.E.2d 185, 189-90 (1967); Herbin v. Commonwealth, 28 Va.App. 173, 183, 503 S.E.2d 226, 231 (1998). Herbin stated that both facets of the M’Naghten test require a showing of a disease of the mind. “Although lay testimony may support a plea of insanity, ‘it is generally recognized that it is advisable to adduce expert testimony to better resolve such a complex problem.’ ” Herbin, 28 Va.App. at 183, 503 S.E.2d at 231 (quoting Shifflett v. Commonwealth, 221 Va. 760, 769, 274 S.E.2d 305, 311 (1981)).
In McCulloch, the trial court excluded lay testimony of the defendant’s behavior, demeanor, and actions because the defendant presented no expert testimony that.the defendant suffered from a disease of the mind. McCulloch sought to prove insanity through lay witnesses alone and did not proffer his expert’s opinion that he was sane. This Court upheld the exclusion of the lay testimony because it was insufficient to establish a prima facie case for insanity. 29 Va.App. at 775, 514 S.E.2d at 800.
The lay testimony in McCulloch is similar to the lay testimony in this case. The defendant distinguishes McCulloch by stressing that the case recognized “in an appropriate case factual testimony alone may be sufficient to establish the defense.” Id. He notes that he offered his expert’s opinion that the defendant was sane because it established he suffered a psychosis. He also argues that Skinner, while not qualified to render an opinion on the issue of sanity, was more than a lay witness.
*131 Dr. Brock issued his initial opinion of the defendant’s mental state at the time of the offense June 5, 2002. He stated that by all indications the defendant was experiencing symptoms of a psychosis at the time of the offense. He had been treated for the symptoms but discontinued his anti-psychotic medication. Without benefit of that medicine, the defendant returned to the use of large amounts of cocaine. Dr. Brock felt cocaine likely caused the defendant’s psychotic symptoms to begin with and exacerbated those symptoms.
The doctor hypothesized the defendant “seems to meet the threshold criteria for an insanity defense,” but he rejected that thesis for two reasons. First, the psychotic symptoms were most likely the result of excessive use of cocaine or exacerbated by it. Second, while most likely psychotic at the time, the defendant made significant efforts to avoid detection. The doctor concluded with his opinion: “Thus, while experiencing a probably drug-induced psychosis at the time of the offense, his understanding of right and wrong was not diminished.”
Dr. Brock updated his initial opinion on November 19, 2002. He stated the additional medical records submitted by the defendant confirmed his earlier opinion that the defendant’s “psychosis was almost surely the result of his substance abuse and not some other mental condition.” The new information did not negate his initial evaluation of the defendant’s “understanding of the nature and consequences of his actions or his understanding of right and wrong.” The doctor repeated his conclusion that the defendant’s drug-induced psychotic state “does not, in my opinion, meet the criteria necessary for an insanity defense.”
Offering Dr. Brock’s opinion in evidence was not a fact that would distinguish this case from McCulloch. Dr. Brock opined that the defendant was sane at the time of the offense though probably suffering a drug-induced psychosis because he understood the nature and consequences of his actions and understood right and wrong. The lay testimony might refute the factual basis underpinning the expert’s opinion, but dis *132 crediting Dr. Brock’s opinion did not prove the opposite was true.
Dr. Brock opined the defendant had a drag-induced psychosis. The defendant offered to prove he heard voices when he had no access to drags. That lay testimony might refute the factual basis for a diagnosis of drag-induced psychosis, but it was not competent to provide proof of some other psychosis. The lay testimony did not provide an evidentiary basis for finding the existence of a mental disease or defect.
Dr. Brock rejected the hypothesis that the defendant met the threshold criteria for an insanity defense for two reasons. The lay testimony did not refute the factual basis for the second part of Dr. Brock’s analysis that concluded the defendant’s actions to avoid detection showed he understood right from wrong. The lay testimony did not provide an evidentiary basis for finding the defendant incapable of understanding his actions or telling right from wrong.
The lay testimony of the defense witnesses might undercut a factual basis for Dr. Brock opining the defendant suffered a drug-induced psychosis, but it was not competent to transform the professional evaluation of Dr. Brock into proof of the opposite evaluation. Disproving one part of the factual basis for his opinion that the defendant did not “meet the criteria necessary for an insanity defense” did not establish a prima facie case upon which a jury could find the converse.
The defendant conceded in the trial court that Skinner was not qualified to render an opinion on the issue of sanity. Expert witnesses are entitled to state opinions, but lay witnesses must recount facts. See A Guide to Evidence in Virginia, Art. VII (2005); Charles E. Friend, The Law of Evidence in Virginia §§ 17-1, -4 (6th ed.2003). No “quasi-expert” category exists to permit a witness to give the type of non-opinion opinion that the defendant ascribed to Skinner. In his brief the defendant states,
While Mr. Skinner may not have been qualified to give a forensic opinion as to legal insanity, nothing should have precluded him from rendering his professional opinion re *133 garding the Defendant’s belief that prior to, duiing, and after the offense he was hearing voices; that the Defendant believed these voices to be orders from God and that God’s law superceded man’s law.
The defendant argued to the trial court that Skinner provided an opinion as to the rationale behind the defendant’s action. While claiming to accept the fact that Skinner was not qualified to state opinions, the defendant elevated his testimony to that of an expert.
Skinner was a lay witness who could only recite facts relevant to issues in dispute. While the proffered evidence might permit the fact finder to disregard the defendant’s expert who said the defendant was not insane, it would not permit a jury to conclude the opposite opinion was proven. The defendant’s evidence did not establish a prima facie showing that he met the M’Naghten test.
The term “prima facie case” is used in two different senses. It may mean simply that the evidence is “sufficient to get to the jury, or it may mean [that the evidence] is sufficient to shift the burden of producing evidence.” McCormick on Evidence § 842, at 965 n. 4 (3d ed.1984). See also Friend, supra § 9-5, at 329. It is used in the former sense when applied to an affirmative issue such as the defense of insanity. A prima facie case exists when the evidence constitutes the threshold quantum that permits a jury to find the affirmative defense existed in fact. It is that essential quantity of evidence necessary to raise the defense and allow the jury to consider the issue.
The evidence in this case failed to raise an issue of insanity. Unless Skinner’s testimony is treated as a qualified opinion, the defendant has no evidence that he suffered from a mental disease and did not know right from wrong. No qualified witness testified that the defendant labored under a defect of reason from a disease of the mind so that he did not know the nature and consequences of his act, or if he did know, that his act was wrong. Price, 228 Va. at 458, 323 S.E.2d at 109.
*134 While lay witnesses may testify to the attitude and demean- or of the defendant, “lay witnesses cannot express an opinion as to the existence of a particular mental disease or condition.” Mullis v. Commonwealth, 3 Va.App. 564, 573, 351 S.E.2d 919, 925 (1987) (citing Phillips v. Stewart, 207 Va. 214, 220, 148 S.E.2d 784, 789 (1966)).
Herbin, 28 Va.App. at 183, 503 S.E.2d at 231.
In Mullis, 3 Va.App. at 573, 351 S.E.2d at 925, a lay witness was not permitted to explain the defendant’s actions by testifying that he was “paranoid” because this might suggest to the jury that the defendant had been diagnosed “paranoid.” In this case, no expert evidence supported the insanity defense, and the only qualified testimony stated the opposite. The other witnesses could only recite observed behavior. The recital of the defendant’s behavior did not provide any factual base from which a jury could find the defendant was suffering from a mental disorder or disease that prevented him from distinguishing right from wrong. The trial court did not err in granting the motion in limine.
The defendant also challenges the trial court’s denial of his motion for a continuance and for a post-trial determination of sanity. Granting a continuance is a matter for the discretion of the trial court. Cardwell v. Commonwealth, 248 Va. 501, 509, 450 S.E.2d 146, 151 (1994). We find no error because the record reflects a sound basis for denying a continuance on the morning of the trial.
The defendant maintains that the trial court erred in not ordering the defendant treated in a mental hospital rather than sentenced to the department of corrections pursuant to Code § 19.2-176(A). The trial court heard extensive evidence of the defendant’s mental condition at sentencing. It had a second expert evaluation from a psychologist employed by the defense after the trial. That opinion varied from that of the defendant’s appointed expert. The trial court weighed the expert and lay evidence, and determined the defendant needed continued treatment. However, it found the evidence was not clear and convincing that the defendant should be confined in *135 a mental hospital rather that sentenced to the penitentiary. It is the province of the trial judge to weigh and evaluate the evidence. Barker v. Commonwealth, 230 Va. 370, 373, 337 S.E.2d 729, 732 (1985). The evidence supported the trial court’s decision. Accordingly, we find no error.

Affirmed.

. In granting the appeal, we directed the parties to address the impact of a conditional plea of nolo contendere under Code § 19.2-25. The Commonwealth maintained the position it took at trial that the statute permits a conditional plea of nolo contendere. Accordingly, we do not consider that issue on the merits.

. The defendant’s roommate in Louisiana would testify that the defendant believed "God needed soldiers” and that "someone was out to get him” before the defendant left to go to Virginia. His mother would testify that the defendant received two traffic citations in Louisiana for driving at a high rate of speed with his lights off, that he reported "hearing voices,” and that he said he believed “God and the devil were fighting over his soul.” A correctional officer would testify that defendant told her a few times a week, early in his incarceration, that he was hearing voices. She said the defendant "would stop [complaining about the voices] for awhile and not need any help and then it would start again.” The defendant made similar statements to at least one other correctional officer.