ELDER, J., with whom FITZPATRICK, C.J., and BENTON, J.,
join, dissenting.
I believe the trial court’s exclusion of all evidence related to appellant’s sanity was error, and I would reverse and remand for a new trial without reaching appellant’s other assignments of error. Thus, I respectfully dissent.
“[I]nsanity is an affirmative defense that the defendant must establish” by a preponderance of the evidence. Shifflett v. Commonwealth, 221 Va. 760, 769, 274 S.E.2d 305, 310 (1981); see Taylor v. Commonwealth, 208 Va. 316, 322, 157 S.E.2d 185,189-90 (1967).
“ ‘[T]he actual M’Naghten test for insanity, stated in the disjunctive, is the rule in Virginia.’ ” Herbin v. Commonwealth, 28 Va.App. 173, 181, 503 S.E.2d 226, 230 (1998) (quoting Price v. Commonwealth, 228 Va. 452, 459, 323 S.E.2d 106, 110 (1984)). Under this rule,
“it must be clearly proven that, at the time of the committing of the act, the party accused was labouring [sic] under such a defect of reason, from disease of the mind, as not to know the nature and quality of the act he was doing; or, if he did know it, that he did not know he was doing what was wrong.”
Price, 228 Va. at 457-58, 323 S.E.2d at 109 (quoting M’Naghten’s Case, 10 Cl. & F. 200, 8 Eng. Rep. 718, 722-23 (1843) (emphasis added)). The Supreme Court of Virginia has explained the application of both facets of the test as follows:
“The first portion of M’Naghten relates to an accused who is psychotic to an extreme degree. It assumes an accused who, because of mental disease, did not know the nature and quality of his act; he simply did not know what he was *136 doing. For example, in crushing the skull of a human being with an iron bar, he believed that he was smashing a glass jar. The latter portion of M’Naghten relates to an accused who knew the nature and quality of his act. He knew what he was doing; he knew that he was crushing the skull of a human being with an iron bar. However, because of mental disease, he did not know that what he was doing was wrong. He believed, for example, that he was carrying out a command from God.”
Id. at 459-60, 323 S.E.2d at 110 (quoting Charles Torcía, Wharton’s Criminal Law § 100, at 9 (14th ed.1979)). Where the offender knows the act is against the law but believes he was under orders from God to commit it, his actions satisfy the second facet of the M’Naghten test. People v. Schmidt, 216 N.Y. 324, 110 N.E. 945, 949 (1915) (Cardozo, J.).
Knowledge that an act is forbidden by law will in most cases permit the inference of knowledge that ... it is also condemned as an offense against good morals. Obedience to the law is itself a moral duty. If, however, there is an insane delusion that God has appeared to the defendant and ordained the commission of a crime, we think it cannot be said of the offender that he knows the act to be wrong.
Id.; see People v. Skinner, 39 Cal.3d 765, 217 Cal.Rptr. 685, 704 P.2d 752, 764 (1985) (“Courts in a number of jurisdictions which have considered the question have come to the same conclusion as we do, that a defendant who is incapable of understanding that his act is morally wrong is not criminally liable merely because he knows the act is unlawful.”); see also, e.g., State v. Worlock, 117 N.J. 596, 569 A.2d 1314, 1321-22 (1990); State v. Kirkham, 7 Utah 2d 108, 319 P.2d 859, 860-61 (1958).
Evidence of past acts of the accused, whether criminal or not, are admissible if they have a tendency to show the mental condition of the accused at the time of the commission of the charged offense. Farris v. Commonwealth, 209 Va. 305, 307, 163 S.E.2d 575, 576 (1968).
*137 “While lay witnesses may testify to the attitude and demeanor of the defendant, ‘[l]ay witnesses cannot express an opinion as to the existence of a particular mental disease or condition.’ ” Herbin, 28 Va.App. at 183, 503 S.E.2d at 231 (quoting Mullis v. Commonwealth, 3 Va.App. 564, 573, 351 S.E.2d 919, 925 (1987)) (holding lay witness could not describe defendant’s actions as “paranoid” because such a description might suggest to the jury that defendant had been diagnosed as “paranoid”). Thus, “[although sanity or insanity may be established by lay witnesses, it is generally recognized that it is advisable to adduce expert testimony to better resolve such a complex problem.” Shifflett, 221 Va. at 769, 274 S.E.2d at 311. Applying these principles in McCulloch v. Commonwealth, 29 Va.App. 769, 514 S.E.2d 797 (1999), we upheld the trial court’s exclusion of lay testimony—“testimony of lay witnesses who observed [McCulloch’s] behavior, demeanor, and actions”—on the issue of sanity because “no medical evidence supporting an insanity defense was introduced, and the lay testimony defendant proffered was insufficient to establish a prima facie case for an insanity defense.” Id. at 775, 514 S.E.2d at 800 (emphasis added).
Here, appellant conceded that Joseph Skinner—a licensed clinical social worker—lacked “training] for forensic evaluations,” “doesn’t make the decisions of insanity,” and thus, could not offer an opinion as to whether appellant was legally insane at the time of the instant offenses. However, counsel noted the opinion of Dr. William Brock—the licensed clinical psychologist appointed by the court expressly for the purpose of evaluating, inter alia, appellant’s sanity at the time of the offense—that appellant “seems to meet the threshold criteria for an insanity defense” because he was “most likely psychotic” at the time of the killing. Although Dr. Brock opined that the psychosis “most likely” resulted from “[appellant’s] voluntary excessive use of cocaine,” which would not have supported an insanity defense, see, e.g., Herbin, 28 Va.App. at 184, 503 S.E.2d at 231 (holding temporary mental defect caused by voluntary ingestion of drugs, whether or not pursuant to an addiction, is insufficient to establish insanity but that *138 long-term and severe drug abuse may cause mental defect or disease that can serve as basis for insanity defense), Dr. Brock conceded that appellant’s cocaine ingestion could merely have exacerbated an underlying mental disorder.[3]
Appellant argued that Skinner, although not an expert on the issue of sanity, nevertheless had significant training and experience in the diagnosis and treatment of mental health disorders and, thus, would testify as more than a mere lay witness. Appellant had provided Skinner with “a copy of the rules,” and Skinner indicated, based on his review of the rules, that he could provide a “professional opinion.” Appellant had reported to Skinner “that he had been hearing the voices of what he believed to be God, both before and after the incident and at times when he was not taking drugs.” Skinner “believed [appellant] had a type of psychosis that was a religious obsession” and that “at the time of the incident [appellant] believed that God’s law superseded man’s law, and therefore [that] what he did was not wrong.” The court had before it notes of Skinner’s treatment of appellant at the jail from April through November 2002. Those notes detailed appellant’s repeated reports of hearing voices, including the voices of God and the devil, and supported counsel’s proffer regarding Skinner’s expected testimony.[4]
The trial court concluded that Skinner’s testimony about appellant’s mental condition “would not rise to the level of that *139 which would warrant admissibility on the issue of insanity at the time of the offense,” holding in essence that the testimony would not be relevant because he could not render an opinion on the issue of sanity. Appellant conceded in the trial court that Skinner was not qualified to render an opinion on the issue of sanity.[5] Thus, I agree with the majority that the trial court did not err in preventing Skinner from testifying to his opinion that appellant was legally insane or did not know the difference between right and wrong when he committed the charged offenses. Nevertheless, I would hold the trial court abused its discretion in excluding the remainder of Skinner’s proffered testimony, along with the additional proffered lay testimony, to the extent such testimony could have established a non-drug-induced cause of appellant’s psychosis and an inability to understand right from wrong, and other relevant evidence bearing on the issue of appellant’s mental state at the time of the offense.
Code § 19.2-169.5 governs the appointment of a qualified mental health expert or experts to evaluate the sanity of a defendant who establishes “probable cause to believe that the defendant’s sanity will be a significant factor in his defense and that the defendant is financially unable to pay for expert assistance.” Code § 19.2-169.5(A). That code section provides that any expert so appointed “shall be (a) a psychiatrist, a clinical psychologist, or an individual with a doctorate degree in clinical psychology who has successfully completed [certain approved] forensic evaluation training ... and (ii)[is] qualified by specialized training and experience to perform forensic evaluations.” Id.; cf. Code § 19.2-264.3:1 (governing appointment of mental health expert for defendant “charged with or convicted of capital murder,” containing same requirements for appointment as Code § 19.2-169.5). A defendant who “intends (i) to put in issue his sanity at the time of the crime charged and (ii) to present testimony of an expert to support his claim on this issue at trial ... shall give notice in *140 writing to the attorney for the Commonwealth____” Code § 19.2-168. The Supreme Court has held that where an accused gives notice of such intent, the trial court “ha[s] the inherent power to require [the accused] to be examined [on behalf of the Commonwealth] ... in order that his examiners might report their opinions as to his sanity at the time of his alleged crimes and testify to such opinion [before the jury] if called by the Commonwealth as rebuttal witnesses.” Shifflett, 221 Va. at 769, 274 S.E.2d at 311 (emphasis added). The legislature subsequently codified this right at Code § 19.2-168.1. See 1982 Va. Acts, ch. 653; 1986 Va. Acts, ch. 535. Experts appointed to aid the accused or the Commonwealth in addressing the issue of the accused’s sanity at the time of the offense have been permitted to testify both that the accused “did not understand right from wrong, did not understand the nature, character and consequences of his acts committed on that date, and was legally insane ” and that the accused “was not psychotic or insane on [the day of the offense], knew what he was doing at that time, and knew that it was wrong.”[6] Id. at 764-65, 274 S.E.2d at 307-08 (emphases added); see also Jones v. Commonwealth, 28 Va.App. 444, 448-49, 506 S.E.2d 27, 29 (1998) (holding proffer of expected testimony of clinical psychologist that defendant’s illness “made her unable to understand the nature and consequences of her acts and *141 unable to understand right from wrong” and psychologist’s written report that defendant suffered from various psychiatric disorders that “render[ed] her mentally incompetent in times of extreme stress” “clearly establish[ed] that [the psychologist] could have provided an evidentiary basis upon which the jury might have found that [the defendant] was insane at the time of the offense”).
Our case law clearly establishes that lay testimony relevant to the issue of legal sanity also is admissible as long as the evidence as a whole is sufficient to establish a prima facie case for an insanity defense. See McCulloch, 29 Va.App. at 775, 514 S.E.2d at 800; see also People v. Scala, 128 Misc.2d 831, 491 N.Y.S.2d 555, 562-63 (N.Y.Sup.Ct.1985) (upholding admissibility, in cases involving insanity defense, of relevant testimony from neurologists and other “nonpsychiatric physicians” as well as “properly qualified licensed nonphysician mental health professionals” such as licensed clinical social workers (emphasis added)). Here, assuming Skinner’s testimony would have been insufficient on its own to prove insanity, when coupled with Dr. Brock’s testimony and the additional lay testimony, it was sufficient to allow appellant to establish a prima facie case for an insanity defense. No case law states the principle, apparently adopted by the majority, that the testimony sufficient to establish a prima facie case must come from a single witness. Our case law also contains no requirement that an expert opine on the ultimate issue—that the defendant was legally insane—in order for the jury to reach such a conclusion itself based on evidence that the defendant suffered from a mental disease or defect that was not drug induced and that prevented him from knowing the nature and quality of his act or from knowing that his actions were wrong.
Dr. Brock opined that, “[b]y all indications, [appellant] was, indeed, experiencing symptoms of a psychosis at the time of the offenses” and was “most likely psychotic” at that time. As a result, Dr. Brock wrote “that [appellant] seems to meet the threshold criteria for an insanity defense.” Dr. Brock concluded appellant’s psychosis resulted from the voluntary ingestion of illegal drugs, which he said would have disqualified *142 appellant from asserting an insanity defense, but he conceded appellant’s cocaine ingestion could merely have exacerbated an underlying mental disorder. Appellant was entitled to offer evidence that his psychosis resulted from an underlying mental disorder rather than his voluntary ingestion of illegal drugs. Appellant also was entitled to offer evidence that he acted based on what he believed were orders from God and, thus, that he did not know what he was doing was morally wrong. Such evidence was highly relevant and, if believed by the fact finder, would have permitted the fact finder to reject the conflicting portions of Dr. Brock’s opinion and to reach an independent conclusion on the ultimate issue of appellant’s sanity at the time of the offenses.
Appellant attempted to offer such testimony through Mr. Skinner. While Skinner was not able, based on appellant’s concession, to testify as to the ultimate issue of insanity, his proffered testimony provided a basis to disregard Dr. Brock’s legal conclusion that appellant’s voluntary drug use precluded an insanity defense. Evidence admitted at the sentencing hearing confirmed that Skinner had both training as a licensed clinical social worker and experience as the director of an outpatient mental health services organization for a period of twenty-five years. Skinner met appellant within two weeks of the instant offenses and counseled him in jail on a regular basis for the six months preceding the date scheduled for trial; the notes from those counseling sessions were admitted into evidence and were available to the court when it made its ruling. Skinner could not testify, based on appellant’s concession, that appellant was insane when he committed the offense or that he did not know the difference between right and wrong at that time. However, Skinner should have been permitted to testify about any relevant symptoms that he observed and that appellant reported while Skinner was treating appellant during his incarceration, including appellant’s ongoing reports that he heard the voices of God and others, as well as other issues within Skinner’s area of competence not touching on the ultimate issue of sanity. Other proffered evidence, including the testimony of appellant’s mother, would *143 have supported a finding that appellant began hearing voices before he became a heavy user of cocaine. This evidence, taken as a whole, if believed by the trier of fact, would have negated Dr. Brock’s opinion that appellant’s psychosis did not qualify him for an insanity defense because it resulted from the voluntary ingestion of illegal drugs.
The evidence, if believed, also provided both a legal and a factual basis for the trier of fact to reject Dr. Brock’s conclusion that appellant understood right from wrong and, thus, could not avail himself of the insanity defense. The proffered testimony was that appellant reported God told him to “do battle” with the victim and said he believed he was “doing God’s work,” whether or not he knew it was against the law. Under settled principles, where the offender knows the act is against the law but believes he was under orders from God to commit it, his actions satisfy the second facet of the M’Ntighten test. See, e.g., Schmidt, 110 N.E. at 949. Thus, contrary to the opinion of Dr. Brock, the trier of fact could have concluded the evidence supported this prong of the insanity defense even if appellant showed an awareness that his actions were criminal by engaging in efforts to avoid apprehension.
The record also provides a factual basis upon which a jury could have found appellant did not engage in efforts to avoid detection and apprehension. Although appellant donned a bandana before approaching the murder victim, he did so while in the presence of a witness. Appellant had no prior connection to the witness and was in his presence only because appellant had paid the witness $1,300 to drive him to New York when his car broke down. Further, appellant specifically told the witness to wait for him while he went to commit murder. The witness, clearly more rational than appellant, drove off and contacted police, which led to appellant’s apprehension for the crime. Although appellant fled the scene of the murder and spent the night in a vacant house, no evidence in the record indicates he did so, as Dr. Brock opined, in order to hide from police. A plausible hypothesis from the evidence in the record is that appellant stayed in the vacant house because God told him to do so or simply because he had *144 insufficient funds for a hotel room. Further, although appellant may have disposed of some of his bloody clothing, he did not remove his bloodstained shoes or socks, and he also retained some bloodstained money. Finally, he donned additional clothing of a type hardly calculated to help him avoid detection by the police—“a white fur coat, ... red tights, and yellow shorts.” Police spotted him in these clothes as he walked backwards on an interstate exit ramp, facing down the ramp while proceeding up it, behavior a jury could find was more rather than less likely to bring him to the attention of police. Thus, although Dr. Brock opined appellant engaged in efforts to avoid apprehension that showed he knew his actions were punishable under the law, the record would have permitted a jury to draw the opposite conclusion.
Because appellant proffered relevant evidence that, if believed by the trier of fact, would have permitted the fact finder to infer he was legally insane at the time of killing, I would hold the trial court committed reversible error in granting the Commonwealth’s motion to exclude all evidence related to appellant’s mental condition and sanity at the time of the offense. Despite Skinner’s inability to testify that appellant was “insane” or believed “what he did was not wrong,” the testimony outlined above was highly probative of the issue of appellant’s sanity, and its exclusion was reversible error.
For these reasons, I would hold the trial court’s exclusion of all evidence related to appellant’s sanity was error and would reverse and remand for a new trial without reaching appellant’s other assignments of error. Thus, I respectfully dissent.

. A more detailed summary of Dr. Brock’s opinion and other evidence related to the insanity defense is contained in the panel majority opinion. See White v. Commonwealth, 44 Va.App. 429, 431-37, 605 S.E.2d 337, 338-41 (2004).

. What may be relevant to a trial court's threshold determination of whether an accused is entitled to present an insanity defense may be different from what will be admissible at trial to prove or disprove that defense. Cf. Pritchett v. Commonwealth, 263 Va. 182, 187, 557 S.E.2d 205, 208 (2002) (holding error to exclude proffered expert testimony that defendant was mentally retarded and that his mental retardation rendered him susceptible to suggestive police interrogation resulting in confession "so long as the expert does not opine on the truth of the statement at issue” because “such testimony [would] improperly invade[ ] the province of the jury to determine the reliability of a witness”).

. I would assume without deciding, for purposes of this appeal only, that his concession was an accurate statement of the law.

. Generally, neither lay nor expert witnesses are permitted to give testimony on an ultimate issue in a criminal case because allowing such testimony would "invade the province of the jury.” See, e.g., Strawderman v. Commonwealth, 200 Va. 855, 859-60, 108 S.E.2d 376, 379-80 (1959); see also 1993 Va. Acts, ch. 909 (codified at Code § 8.01-401.3 (partially abrogating rule in civil cases, as to testimony about purely factual rather than legal matters, and leaving intact “the exceptions to the ultimate fact in issue’ rule recognized in the Commonwealth prior to enactment of this section”)). However, as discussed in the text, the Supreme Court has allowed expert testimony on the precise issue of whether a defendant was "legally sane” or "legally insane” at the time of the charged offense. See Shifflett, 221 Va. at 769, 274 S.E.2d at 311. Commentator Charles Friend has observed that "opinion [testimony] has been received on questions of, inter alia, mental condition, ... based upon the practical difficulty of conveying such information to the jury in any other form.” Charles E. Friend, The Law of Evidence in Virginia § 17-3(a), at 643 (6th ed.2003).